```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
NEW YORK UNIVERSITY,                :
                                    :
            Plaintiff,              :    06 Civ. 5274 (JSR)
                                    :
       -v-                          :    OPINION AND ORDER
                                    :
AUTODESK, INC.,                     :
                                    :
            Defendant.              :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

In this action, plaintiff New York University ("NYU") alleges that certain products of defendant Autodesk, Inc. ("Autodesk") infringe two of NYU's patents. By motion dated March 20, 2007, pursuant to Fed. R. Civ. P. 56, Autodesk moved for summary judgment on the ground that these two patents are invalid because the United States Patent and Trademark Office ("PTO") acted unlawfully when it granted NYU's petition to revive the underlying patent application after NYU had abandoned it.[1] For its part, NYU, by motion also dated March 20, 2007, moved for summary judgment on various grounds. For the reasons that follow, Autodesk's motion is granted and NYU's motion is denied as moot.

The pertinent facts, either undisputed, or, where disputed, taken most favorably to NYU, are as follows. NYU owns the two patents at issue in this action: U.S. Patent Nos. 6,115,053 (the "'053 patent") and 6,317,132 (the "'132 patent"). See Autodesk, Inc.'s Local Rule 56.1 Statement of Material Facts in Support of Its

---

[1] Autodesk also moved, in the alternative, for summary judgment on the ground that NYU has not produced sufficient evidence of infringement. The Court need not reach this issue.

Motion for Summary Judgment ("Def. St.") ¶ 3; New York University's Response to Autodesk's Statement of Material Facts ("Pl. Opp'n St.") ¶ 3.  These two patents both trace back to the same patent application, U.S. Patent Application Serial No. 08/284,799 (the "'799 application").  Def. St. ¶¶ 9-10; Pl. Opp'n St. ¶¶ 9-10.

The '799 application was filed on August 2, 1994.  Def. St. ¶ 9; Pl. Opp'n St. ¶ 9.  Nearly three years later, on April 14, 1997, PTO Examiner Joseph R. Burwell mailed a form called the "Final Office Action" in the '799 application to NYU's attorney-of-record, Eliot S. Gerber, Esq., at the firm of Wyatt, Gerber, Burke & Badie ("Wyatt Gerber").  Def. St. ¶ 11; Pl. Opp'n St. ¶ 11.  The Final Office Action required NYU, if it wished to pursue approval of the '799 application to conclusion, to answer certain inquiries by July 14, 1997.  Def. St. ¶ 11; Pl. Opp'n St. ¶ 11.  Gerber, however, had previously transferred his files relating to the '799 application to attorney Chris Kolefas, Esq., at the firm of Kenyon & Kenyon, so when Gerber received the Final Office Action he forwarded it to Kolefas along with a cover letter dated April 16, 1997.  Def. St. ¶ 12; Pl. Opp'n St. ¶ 12.  Gerber also sent a copy of the cover letter, without the enclosure, to an individual named Patrick Franc, a member of NYU's Office of Industrial Liaison, who was the person at NYU responsible for the '799 application.  Def. St. ¶ 12; Pl. Opp'n St. ¶ 12.

NYU did not file a response to the Final Office Action by the due date of July 14, 1997, or even by October 14, 1997, which marked

the end of an extended filing period NYU could have obtained upon payment of a fee.  Def. St. ¶ 14; Pl. Opp'n St. ¶ 14.  The PTO's records show, moreover, that on December 5, 1997, Examiner Burwell telephoned Kolefas, who confirmed the abandonment.  Def. St. ¶ 15; Pl. Opp'n St. ¶ 15.  Accordingly, on December 8, 1997, the PTO duly issued a Notice of Abandonment, declaring that the '799 application had been abandoned as of July 14, 1997.  Def. St. ¶¶ 14-15; Pl. Opp'n St. ¶¶ 14-15.  The file copy of the notice included Examiner Burwell's handwritten note stating that "Examiner confirmed abandonment with Attorney Chris Kolefas by telephone 12/5/97."  Def. St. ¶ 15; Pl. Opp'n St. ¶ 15; Declaration of Joel M. Freed dated March 28, 2007 ("Freed Decl."), Ex. I ("Prosecution History") at NYU004004; <u>see also</u> transcript, April 26, 2007, at 3-5.

It is undisputed that as of December, 1997, Kolefas was the attorney responsible for prosecuting the '799 application on behalf of NYU.  Def. St. ¶ 16; Pl. Opp'n St. ¶ 16.  "Several weeks" later, however, Kolefas left Kenyon & Kenyon, and no longer represented NYU at that point.  Pl. Opp'n St. ¶ 16.  In May 1998, Gary Abelev, Esq., also of Kenyon & Kenyon, took over the prosecution of the '799 application, but took no action at the time.  Def. St. ¶ 18; Pl. Opp'n St. ¶ 18.  Some six months later, however, on November 4, 1998, Abelev filed a petition to revive the '799 application, stating, in pertinent part:

> Applicant hereby petitions to revive the above-identified abandoned application under 37 C.F.R. § 1.137(b).  The application became unintentionally abandoned on July 14, 1997 for

3

> failure to timely respond to the Final Office
> Action mailed April 14, 1997 . . . .
> Applicant's failure to file a response
> was unintentional.

Prosecution History at NYU004024; Def. St. ¶ 18; Pl. Opp'n St. ¶ 18. The petition did not provide any reason or support for Abelev's representation that NYU's failure to file a response was "unintentional." Further, Abelev saw fit to make this representation in spite of the fact that, prior to filing the petition (as well as thereafter) he failed to contact Kolefas, who had previously confirmed abandonment to the PTO, or Gerber, who was listed as NYU's attorney of record on the Notice of Abandonment.[2] Def. St. ¶ 20; Pl. Opp'n St. ¶ 20.

In reliance on Abelev's representation, the PTO granted NYU's petition to revive in a decision dated September 15, 1999, which the PTO sent to Wyatt Gerber and copied to Kenyon & Kenyon. Prosecution History at NYU004029-30; Def. St. ¶ 21; Pl. Opp'n St. ¶ 21. The decision states, in pertinent part:

> This is a decision on the petition, under
> 37 C.F.R. 1.137(b), filed November 4, 1998, to
> revive an unintentionally abandoned
> application.
> The petition is GRANTED.

---

[2] Autodesk asserts, as an additional basis for summary judgment, that Abelev's representation to the PTO that NYU's delay in petitioning for revival was "unintentional" -- a representation made despite Kolefas' prior confirmation of abandonment and despite Abelev's failure to contact either Abelev or Gerber about the abandonment -- constitutes "inequitable conduct." Although Abelev's representation was, at a minimum, highly problematic, if not spurious, the Court need not reach the issues of whether its deficiencies, and Abelev's responsibility for same, warrant summary judgment.

4

> This application became abandoned for failure to reply timely to the Office action mailed April 14, 1997, which set a period for reply of three months. A Notice of Abandonment was mailed on December 8, 1997.
> . . . .
> 37 CFR 1.137(b)(3) requires a statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(b) was unintentional. If the statement contained in the instant petition varies from the language required by 37 CFR 1.137(b)(3), the statement contained in the instant petition is being construed as the statement required by 37 CFR 1.137(b)(3) and petitioner must notify the Office if this is not a correct interpretation of the statement contained in the instant petition.

Prosecution History at NYU004029; Def. St. ¶ 21; Pl. Opp'n St. ¶ 21. NYU did not respond to the decision. Def. St. ¶ 22; Pl. Opp'n St. ¶ 22. If the PTO had not revived the '799 application, neither the '053 patent nor the '132 patent would have issued. Def. St. ¶¶ 23-24; Pl. Opp'n St. ¶¶ 23-24.

Turning to the instant motion, the relevant legal standards are well established. A party is entitled to summary judgment only if it can show by undisputed facts supported by admissible evidence that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, see, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and in assessing the record to determine whether there is a genuine issue as to a material fact, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary

judgment is sought, see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA"), this Court must "hold unlawful and set aside" PTO actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). See New York Univ. v. Autodesk, Inc., 466 F. Supp. 2d 563, 564-66 (S.D.N.Y. 2006); see also Dickinson v. Zurko, 527 U.S. 150, 164 (1999) (confirming that APA applies to PTO decisions); Lawman Armor Corp. v. Simon, 2005 WL 1176973, at *3 (E.D. Mich. 2005) (applying APA to PTO decision granting petition for revival); Field Hybrids, LLC v. Toyota Motor Corp., 2005 WL 189710, at *5, *8 (D. Minn. 2005) (same). "In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973).

The Supreme Court has described the scope of review under this standard as follows:

> The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress

>  has not intended it to consider, entirely
> failed to consider an important aspect of the
> problem, offered an explanation for its
> decision that runs counter to the evidence
> before the agency, or is so implausible that
> it could not be ascribed to a difference in
> view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal citations and quotation marks omitted). See In re Sang Su Lee, 277 F.3d 1338, 1344 (Fed. Cir. 2002) (applying State Farm to PTO decision).

Under 35 U.S.C. § 133, a patent application is deemed "abandoned" when the patent applicant "fail[s] . . . to prosecute the application within six months" of any PTO action with respect to the application, unless the patent applicant shows "that such delay was unavoidable." Federal regulations allow for the revival of abandoned applications where, inter alia, the patent applicant provides "[a] statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition . . . was unintentional." 37 C.F.R. § 1.137(b)(3).[3] Under this regulation, where "there is a question whether the delay was unintentional," the PTO "may require additional information." Id.

The analysis here begins with "the administrative record already in existence," Camp, 411 U.S. at 142, which contains two pertinent pieces of evidence. First, there is the handwritten note

---

[3] Autodesk also argues that 37 C.F.R. § 1.137 is invalid to the extent it permits the revival of "unintentionally" abandoned applications because 35 U.S.C. § 133 only permits the revival of "unavoidably" abandoned applications. The Court need not reach this issue.

7

on the Notice of Abandonment stating that Examiner Burwell "confirmed abandonment with Attorney Chris Kolefas by telephone 12/5/97." Prosecution History at NYU004004; Def. St. ¶ 15; Pl. Opp'n St. ¶ 15. Second, there is NYU's statement in the petition to revive that NYU's "failure to timely respond to the Final Office Action mailed April 14, 1997 . . . was unintentional." Prosecution History at NYU004024; Def. St. ¶ 18; Pl. Opp'n St. ¶ 18.

Examiner Burwell's note directly contradicts NYU's statement. The note suggests that as of December 5, 1997, if not earlier, Kolefas and NYU were on notice that the PTO had deemed the '799 application abandoned and that some action would be necessary to revive the application.[4]  In light of that notice, without more, no reasonable factfinder could find that NYU's decision not to take action -- and instead to "delay" seeking revival -- for the entire period between July 14, 1997 and November 4, 1998 was "unintentional"

---

[4] NYU argues that it was not on notice of the abandonment because Kolefas did not inform NYU of the abandonment, was not authorized to confirm abandonment, and in any event left his firm and stopped representing NYU "[w]ithin weeks" of confirming abandonment.  NYU Memorandum in Opposition to Autodesk's Motion for Summary Judgment ("Pl. Opp'n Mem.") at 5-6, 13.  However, NYU is legally bound by Kolefas' actions and "is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"  Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1879)).  Further, even if Kolefas stopped representing NYU within weeks of confirming abandonment, the governing regulation provides that revival may be granted only where the "entire delay" was unintentional, 37 C.F.R. § 1.137(b)(3) (emphasis added), and the plain meaning of the word "entire" here is that revival may not be granted where a party intentionally delays seeking revival for even a few weeks.

under 37 C.F.R. § 1.137(b)(3).[5]  See Lawman Armor Corp., 2005 WL 1176973 at *5 (finding that where a party's "representative confirmed to the USPTO that no steps had been taken to respond to a final office action," this constitutes a "deliberate act[]" that "cannot be considered unintentional").

The PTO's decision granting revival, however, relies exclusively on NYU's conclusory statement that its delay was unintentional and makes no mention of Examiner Burwell's note or any other pertinent fact. The decision merely states (a) that "37 CFR 1.137(b)(3) requires a statement that the entire delay in filing the required reply . . . was unintentional," (b) that NYU's representation in the petition to revive that "Applicant's failure to file a response was unintentional" would be "construed as the statement required by 37 CFR 1.137(b)(3)," and (c) that NYU was required to "notify the Office if this is not a correct interpretation," which NYU did not do. See Prosecution History at NYU004024, NYU004029-30; Def. St. ¶¶ 21-22; Pl. Opp'n St. ¶¶ 21-22.

---

[5] With what a lawyer might call ingenuity and what a layperson might call sophistry, NYU argues that when Kolefas "confirmed" abandonment to the PTO he meant only to confirm the "fact" that the application had been legally abandoned and did not mean to communicate to the PTO that NYU "intended" to abandon the '799 application. See Pl. Opp'n Mem. at 3, 12. However, even indulging the highly unlikely possibility that Kolefas meant only to confirm the "fact" of abandonment, that confirmation still shows that NYU was on notice of the abandonment, and it is that notice, independent of whatever Kolefas meant to communicate, that mandates the unrebutted inference that NYU's delay in seeking revival was not unintentional.

9

Although "[t]he scope of review under the arbitrary and capricious standard is narrow," the agency still must "articulate a satisfactory explanation for its action" and an agency decision is "arbitrary and capricious if," inter alia, "the agency has . . . entirely failed to consider an important aspect of the problem, [or has] offered an explanation for its decision that runs counter to the evidence before the agency."  State Farm, 463 U.S. at 43 (internal quotation marks omitted).  Here, the PTO's decision more than meets these criteria for arbitrary and capricious action.  The PTO "entirely failed to consider" Examiner Burwell's note in the PTO's own records, which was an "important aspect of the problem" because it directly contradicted NYU's claim of unintentional delay.  Further, the PTO's "explanation for its decision" -- that it was relying on NYU's statement in the petition to revive -- "runs counter" to NYU's confirmed abandonment, evidenced by Examiner Burwell's note, and does not remotely constitute the "satisfactory explanation" that State Farm requires.

Accordingly, the PTO's decision to revive the '799 application was arbitrary and capricious and is hereby "h[e]ld unlawful and set aside."  5 U.S.C. § 706(2)(A).  Further, because neither the '053 patent nor the '132 patent should have issued, see Def. St. ¶¶ 23-24; Pl. Opp'n St. ¶¶ 23-24, NYU's Complaint alleging infringement of these patents must be dismissed.

The Court has considered NYU's other arguments but finds them without merit.  For the foregoing reasons, summary judgment is

granted to Autodesk dismissing NYU's Complaint in its entirety, and NYU's motion for summary judgment is denied as moot.  The Clerk is directed to close documents 42 and 43 and to enter judgment in Autodesk's favor dismissing the Complaint with prejudice.

    SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 13, 2007